UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OMAR POUNCY, #571990,

                Plaintiff,                              Hon. Robert J. Jonker

v.                                                Case No. 1:20-cv-799

MATTHEW MACAULEY, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 19).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted.

## BACKGROUND

       The events giving rise to this action occurred while Plaintiff was incarcerated at the Bellamy Creek Correctional Facility (IBC).   Plaintiff initiated this action against the following IBC personnel: (1) Warden Macauley; (2) Deputy Warden Walczak; (3) Assistant Deputy Warden Blackman; (4) Assistant Deputy Warden McBride; (5) Lieutenant Brokaw; (6) Administrative Assistant Guilford; (7) Lieutenant Rowland; (8) Inspector Moyer; (9) Inspector Gilbert; (10) RUM Hadden; (11) Counselor Ritter; (12) Sergeant Stump; (13) CO Serritos; (14) CO Klein; (15) CO Geisen; and (16) Hearing Investigator Novak.   In his complaint, Plaintiff alleges the following.

Plaintiff, is a "self-taught paralegal who is known for his litigation against the state government in his pursuit of freedom." Plaintiff's "efforts to overturn his unlawfully secured convictions and sentences[1] paid off when a federal district court judge granted him habeas relief in January 2016, which ultimately resulted in Plaintiff's release on bond." Plaintiff's release "exposed in the media how Plaintiff helped other prisoners litigate their cases combined with the fact it was made known that upon release Plaintiff would be hired as a paid paralegal at his attorney, David L. Moffitt's law firm." While on bond, Plaintiff was employed as the "Chief of Research and Appeals, at the Law Offices of David L. Moffitt & Associates, which entailed Plaintiff's representation of various MDOC prisoners." Plaintiff's grant of habeas relief was ultimately reversed, however, and he was returned to IBC on or about March 28, 2019.

Plaintiff alleges that, on March 29, 2019, Defendant Guilford sent an email to Defendants Macauley, Brokaw, Rowland, and McBride instructing them "to invade Plaintiff's confidential attorney-client mail." In the email in question, which is attached to Plaintiff's complaint, Guilford made no such statement. (ECF No. 1, PageID.32). Rather, Guilford noted that the Moffitt law firm was representing

---

[1] Plaintiff is currently serving prison sentences of 46-66 years having been convicted of four counts of carjacking, four counts of armed robbery, and two counts of possessing a firearm during the commission of a felony. *See* Omar Pouncy, available at https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=571990 (last visited September 8, 2021).

Plaintiff in a civil action against the MDOC.    Guilford further noted, however, that "it is believed that [Plaintiff]. . .is conducting legal work on behalf of the Law Offices of David L. Moffitt. . .which is against MDOC policy."    Guilford indicated that Plaintiff and the Moffitt law firm were circumventing MDOC policy by misusing the legal mail system.    Specifically, Guilford noted that "[t]he law firm is believed to circumvent the system by placing one to four pages of [Plaintiff's] legal documents with his current case number on top of an unauthorized lawsuit in hopes that it is processed and allowed into the facility."    Accordingly, Guilford instructed IBC staff to verify that legal material being sent to Plaintiff corresponded to the case(s) in which Plaintiff was a party.[2]

Plaintiff further alleges that, on "multiple occasions" between April 2019 and May 2020, Defendants Geisen and Klein intercepted Plaintiff's legal mail and delivered it to Defendants Macauley, Walczak, Brokaw, Guilford, Rowland, Hadden, Ritter, or Stump for review.    After reviewing Plaintiff's legal mail, Defendants Hadden and/or Ritter refused to deliver such to Plaintiff on the ground that it contained legal material unrelated to any case in which Plaintiff was a party.    On various unspecified dates, Defendants Macauley, Walczak, Guilford, Rowland, and Novak illegally monitored Plaintiff's visits with his attorneys.

---

[2] Documents attached to Plaintiff's Complaint reveal that, in January 2020, David L. Moffitt was barred from visiting Plaintiff after being found guilty of passing contraband to Plaintiff during a visit.    (ECF No. 1, PageID.57-62).

On August 8, 2019, Defendant Guilford placed Plaintiff in segregation. This action was allegedly undertaken as retaliation for grievances Plaintiff filed against Defendants Macauley and Guilford. Documents attached to Plaintiff's complaint, however, reveal that Plaintiff was placed in segregation, pursuant to MDOC policy, because he was being investigated by the United States Attorney for the Eastern District of Michigan "for suspected felonious behavior." Prison officials determined that "it is reasonably believed that [Plaintiff] needs to be segregated while the investigation is pending." Defendants Macauley, Blackman, Walczak, Hadden, Moyer, and Ritter, however, refused to release Plaintiff from segregation "as part of the conspiracy to retaliate against Plaintiff."

After placing Plaintiff in segregation, Defendant Guilford instructed Defendant Serritos to "confiscate all of Plaintiff's legal documents." Guilford further instructed Serritos to review this material and return to Plaintiff only those documents concerning matters in which Plaintiff was a party. The remaining legal documents were reviewed by Defendant Hadden who thereafter "made Plaintiff send the legal documents out of the facility."

Plaintiff asserts two causes of action. First, Plaintiff alleges violation of his First Amendment rights to receive legal mail and participate in confidential meetings with his attorneys. This claim is asserted against Defendants Macauley, Walczak, Brokaw, Guilford, Rowland, Moyer, Gilbert, Hadden, Ritter, Stump, Serritos, Klein, Geisen, Novak, and McBride. Second, Plaintiff alleges that he was placed in

-4-

segregation for unlawful retaliatory reasons.    This claim is asserted against Defendants Macauley, Walczak, Blackman, Guilford, Hadden, Moyer, and Ritter.

All Defendants, save Defendant Blackman, previously moved to dismiss many of Plaintiff's claims on failure to exhaust grounds.    (ECF No. 12).    Defendants' motion was granted in part and denied in part resulting in the dismissal of most of Plaintiff's claims against these Defendants.    (ECF No. 18, 24).    Defendant Blackman now moves for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.    Plaintiff has failed to respond to Defendant's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).    Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).    The existence of a mere "scintilla of evidence" in support of the non-

moving party's position, however, is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'   The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019).   The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue.   (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.   MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019).   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.   MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019).   If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

As noted above, Plaintiff alleges that Defendant Blackman placed him in segregation for unlawful retaliatory reasons.   In support of his motion for summary judgment, Defendant Blackman incorporates by reference, and relies on, the evidence submitted in support of Defendants' previous motion for summary judgment.   As the Court previously observed, Defendants submitted evidence that, during the relevant time-period, Plaintiff pursued seven grievances through all three steps of the grievance process.   (ECF No. 13, PageID.155-97).   By failing to respond to Defendants' previous motion for summary judgment, Plaintiff failed to establish that he pursued additional grievances regarding his present claims.   Likewise, by failing to respond to the present

-8-

motion, Plaintiff has again failed to demonstrate that he pursued any other grievances regarding his present claims.   An examination of the seven grievances Plaintiff pursued reveals the following.

A.     IBC-19-08-1853-17z

Plaintiff submitted this grievance on August 12, 2019, alleging that, on August 8, 2019, Defendant Guilford retaliated against him by instructing Defendants Geisen and Serritos to read his legal mail.   (ECF No. 13 , PageID.166).   Plaintiff further alleged that Geisen and Serritos did, in fact, read his legal mail.   (*Id.*).   Plaintiff pursued this grievance through all three steps of the grievance process.   (*Id.*, PageID.163-67).

Accordingly, this grievance properly exhausts the following claims: (1) Plaintiff's First Amendment claim that Defendant Guilford, on August 8, 2019, instructed Serritos to confiscate and read Plaintiff's legal mail; and (2) Plaintiff's First Amendment claims that Defendants Geisen and Serritos, between the dates of August 8, 2019, and August 12, 2019, illegally read Plaintiff's legal mail.

B.     IBC-19-08-1907-17z

Plaintiff submitted this grievance alleging that on August 21, 2019, Defendant Klein improperly read his legal mail.   (ECF No. 13, PageID.176).   Plaintiff pursued this grievance through all three steps of the grievance process.   (*Id.*, PageID.173-77). Accordingly, this grievance properly exhausts Plaintiff's First Amendment claim that Defendant Klein, on August 21, 2019, illegally read Plaintiff's legal mail.

C.    IBC-19-09-2114-28a

Plaintiff submitted this grievance alleging that Defendant Klein improperly read his legal mail.  (ECF No. 13, PageID.171).   Plaintiff's grievance was rejected as duplicative of a previously submitted grievance.  (*Id.*, PageID.171-72).   The rejection of this grievance was upheld through all three steps of the grievance process.  (*Id.*, PageID.168-72).   Accordingly, this grievance fails to properly exhaust any of the claims in Plaintiff's complaint.

D.    IBC-19-09-2002-28a

Plaintiff submitted this grievance alleging Defendant Klein improperly read his legal mail.  (ECF No. 13, PageID.181).   Plaintiff's grievance was rejected as duplicative of a previously submitted grievance.  (*Id.*, PageID.181-82).   The rejection of this grievance was upheld through all three steps of the grievance process.  (*Id.*, PageID.178-82).   Accordingly, this grievance fails to properly exhaust any of the claims in Plaintiff's complaint.

E.    IBC-19-09-2001-28a

Plaintiff submitted this grievance requesting to be released from segregation. (ECF No. 13, PageID.186).   Plaintiff's grievance was rejected as duplicative of a previously submitted grievance.  (*Id.*, PageID.186-87).   The rejection of this grievance was upheld through all three steps of the grievance process.  (*Id.*, PageID.183-87). Accordingly, this grievance fails to properly exhaust any of the claims in Plaintiff's complaint.

F.      IBC-19-08-1908-22b

Plaintiff submitted this grievance on August 22, 2019, alleging that Defendants

Macauley and Guilford (as well as other individuals not party to this action) conspired

to place him in segregation for improper retaliatory reasons.    (ECF No. 13, PageID.191).

Plaintiff pursued this grievance through all three steps of the grievance process.   (*Id.*,

PageID.188-92).    Accordingly, this grievance properly exhausts Plaintiff's First

Amendment claim that Defendant Guilford unlawfully retaliated against him by placing

him in segregation.

G.      IBC-19-08-1909-28a

Plaintiff submitted this grievance alleging that on August 20, 2019, Defendant

Serritos improperly read his legal mail.    (ECF No. 13, PageID.196).    Plaintiff's

grievance was rejected as duplicative of a previously submitted grievance.    (*Id.*,

PageID.196-97).    The rejection of this grievance was upheld through all three steps of

the grievance process.    (*Id.*, PageID.193-97).    Accordingly, this grievance fails to

properly exhaust any of the claims in Plaintiff's complaint.

As this evidence demonstrates, Plaintiff has failed to properly exhaust his claim

against Defendant Blackman.    Plaintiff has failed to respond to the present motion and,

therefore, has failed to present evidence that he pursued any other grievances regarding

his claims or otherwise properly exhausted his administrative remedies regarding his

claim against Defendant Blackman.    Accordingly, the undersigned recommends that

Defendant Blackman's motion for summary judgment be granted and Plaintiff's claim

against Defendant Blackman be dismissed without prejudice for failure to exhaust administrative remedies.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant's Motion for Summary Judgment (ECF No. 19) be granted and Plaintiff's claim against Defendant Blackman be dismissed without prejudice for failure to exhaust administrative remedies.    For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.    28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: March 9, 2022                    /s/ Phillip J. Green
                                       PHILLIP J. GREEN
                                       United States Magistrate Judge

-12-